UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOSEPH P. CARSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No: 3:20-CV-00463-DCLC-HBG |
| U. S. MERIT SYSTEMS PROTECTION BOARD, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Comes the Defendant, the U.S. Merit Systems Protection Board ("MSPB")[1], by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and submits this Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In bringing this lawsuit, Plaintiff seeks to compel MSPB to fully respond to his November 8, 2019 request for agency records pursuant to the Freedom of Information Act ("FOIA"). However, at this juncture, MSPB has provided full and complete responses to Plaintiff's FOIA request and, as a result, Plaintiff has obtained all the relief that he seeks in his Complaint. Thus, there is no longer

---

[1] Defendant MSPB is an independent, quasi-judicial agency in the executive branch that serves as the guardian of federal merit systems. The MSPB was established by the Civil Service Reform Act of 1978 ("CSRA"), Public Law No. 95-454, codified at 5 U.S.C. § 1101, *et seq*. The CSRA, which became effective January 11, 1979, replaced the Civil Service Commission with three new independent agencies: the Office of Personnel Management, which manages the federal workforce; the Federal Labor Relations Authority, which oversees federal labor-management relations; and the MSPB. The MSPB assumed the employee appeals function of the Civil Service Commission and was given the new responsibilities of performing merit systems studies and reviewing the significant actions of OPM.

a live controversy for the Court to adjudicate. Without a case or controversy, the Court lacks subject matter jurisdiction and the matter must be dismissed.

## I. INTRODUCTION

On November 3, 2020, Plaintiff *pro se*, Joseph P. Carson, filed this instant action under the FOIA, 5 U.S.C. § 552, with respect to a FOIA request that MSPB received on November 8, 2019. The request sought records related to nine specific inquiries which center around Plaintiff's cases now currently pending before the Sixth Circuit Court of Appeals (*Carson v. Department of Energy*, Docket Nos. AT-1221-19-0536-W-1 and AT-1221-19-0536-W-2). According to the Complaint, the purpose of Plaintiff's FOIA request is "to expose how MSPB, possibly starting at its top official, Mr. Leavitt, directed MSPB [to] violate the plaintiff's constitutional right to due process, the law, relevant Supreme Court precedent, codes of judicial ethics, and its own regulations, in failing or refusing to recuse from adjudicating plaintiff's whistleblower appeal by assigning an Administrative Law Judge, per its regulations …." Compl., ¶ 7.

In his Complaint, Plaintiff states that he is "filing this complaint to catalyze MSPB's compliance with its nondiscretionary duties to … respond to his initial FOIA request …." Compl., ¶ 5. Thus, the gravamen of Plaintiff's Complaint is that MSPB failed to respond to his FOIA request within the statutory timeframe, and the relief Plaintiff seeks is a response to his FOIA request. While it is true that at the time of the Complaint's filing MSPB had not fully responded to Plaintiff's FOIA request, the Plaintiff was provided with a final, complete response to his request on January 5, 2021. As a result, the relief Plaintiff seeks from the Court has been provided, making it unnecessary for the Court to intervene in a resolved matter. Simply stated, there is no longer a "live," justiciable controversy before this Court. Plaintiff's claim has been

2
Case 3:20-cv-00463-DCLC-HBG   Document 13   Filed 01/20/21   Page 2 of 13   PageID #: 42

rendered moot by MSPB's complete, final response; and accordingly, this suit should be dismissed for lack of subject matter jurisdiction.

## II. FACTUAL BACKGROUND

Plaintiff submitted a FOIA request to MSPB on November 8, 2019. Compl., ¶ 2. This request was processed by MSPB employee Karin Kelly, a Government Information Specialist for MSPB. Declaration of Karin Kelly ("Kelly Decl."), ¶ 2. In response to Plaintiff's FOIA request, MSPB made two productions to Plaintiff; an interim response dated February 21, 2020, and a final response dated January 5, 2021. Kelly Decl., ¶¶ 4 & 5. The interim response provided Plaintiff with Uniform Resource Locator ("URL") links to the MSPB Judges' Handbook, MSPB regulations, and a press release regarding the appointment of the MSPB's General Counsel. Kelly Decl., ¶ 4. The interim response letter further advised Plaintiff that the MSPB would continue to process the remaining portions of his FOIA request but that he should be aware that MSPB had (and continues to have) a significant backlog of FOIA requests and only one full-time FOIA processor. *Id*. In addition, due to the COVID-19 outbreak, all MSPB personnel have been primarily teleworking since mid-March 2020. *Id*. This has increased the difficulty of responding to FOIA requests and further slowed down MSPB's response time. *Id*. The MSPB issued a final response to Plaintiff on January 5, 2021. Kelly Decl., ¶ 5. The final response provided Plaintiff with an additional 17 pages of documents. *Id*. The final response represented all of the documents responsive to Plaintiff's FOIA request after an appropriate and comprehensive search was completed by MSPB. *Id*. The search and response were produced in good faith.[2] *Id*.

---

[2] A full discussion of the searches, including their manner and means, conducted by MSPB in regards to Plaintiff's FOIA request is found in the Declaration of Karin Kelly, filed contemporaneously herewith.

While all responsive documents were produced to Plaintiff, the production contained certain redactions. *Id*. Prior to disclosure, the responsive documents were reviewed by Ms. Kelly, on a line-by-line basis, to ensure that any exemptions or privileges were identified and protected. Kelly Decl., ¶ 7. After review, it was determined that FOIA Exemptions 5 and 6 applied to various documents. *Id*. FOIA Exemption 5 exempts from disclosure inter-agency or intra-agency memorandums or letters that would not be available by law to a party in litigation with the agency. *Id*. In other words, this exemption protects documents normally privileged in the civil discovery context. *Id*. Here, exemption 5 applies to the documents in question because they are covered by the attorney-client privilege, the attorney work-product privilege and the deliberative process privilege. *Id.* FOIA Exemption 6 exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. *Id*. This requires a balancing of the public's right to disclosure against the individual's right to privacy. *Id*. Here, certain redactions were made to protect the privacy rights of various non-parties.

### III. OVERVIEW OF THE FOIA

The FOIA, 5 U.S.C. § 552, provides that any person has the right to request access to federal agency records. All United States government agencies, as defined at 5 U.S.C. § 552(f), are required to disclose records upon receiving a written request for them, except for those records that are protected from disclosures pursuant to certain exemptions and exclusions specified in the Act. The FOIA requires that an individual submit to the appropriate agency a reasonably described request for records that complies with the agency's published rules that sets forth the time, place, fees, and procedures to be followed when making a request, 5 U.S.C. §

4

Case 3:20-cv-00463-DCLC-HBG   Document 13   Filed 01/20/21   Page 4 of 13   PageID #: 44

552(a)(3). The statute confers jurisdiction upon the district courts to enjoin an agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B).

## IV. ARGUMENT

### A. Standard of Review.

This Court set out an explanation of the dismissal standard under Rule 12(b)(1) of the Federal Rules of Civil Procedure in *Linboe v. City-County Federal Credit Union*, No. 3:06-cv-257, 2006 WL 2708323, at *2 (E.D. Tenn. Sept. 19, 2006):

> Fed. R. Civ. P. 12(b)(1) provides that a party may move to dismiss an action by motion based on lack of jurisdiction over the subject matter. In analyzing a motion under Fed. R. Civ. P. 12(b)(1), a court must make a distinction between Rule 12(b)(1) motions which attack the complaint on its face and those which attack the existence of subject matter jurisdiction in fact. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As to "facial" attacks, the challenge is that the plaintiff has not faithfully recited all the jurisdictional predicates necessary for a court to exercise subject matter jurisdiction. *Id*. As to "factual" attacks, the challenge is the actual existence of a court's jurisdiction over the matter…. *Id*.
>
> A court is obligated to dismiss an action in the absence of subject matter jurisdiction, either on its own motion or by suggestion of a party. 2 Moore's Federal Practice § 12.30[1] (Matthew Bender 3rd Ed.) (citing *Avitts v. AMOCO Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995)).

When a "factual attack" is undertaken, this Court has further noted:

> When the motion to dismiss is based on a "factual attack," no presumptive truthfulness applies to the complaint's factual allegations and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [*RMI Titanium Co.,* 78 F.3d at 1134.] If the facts are in dispute, the Court can exercise wide discretion to consider affidavits, documents outside the complaint, and even conduct a limited evidentiary hearing. *Id*. Consideration of matters outside the pleadings, however, does not convert the Rule 12(b)(1) motion into a Rule 56 motion, as it would under a Rule 12(b)(6) motion. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986).

*Graybeal v. Chesterfield Finance Company*, No. 3:04-cv-274, 2006 WL 1288580, at *4 (E.D. Tenn. May 5, 2006). In the instant matter, MSPB makes a factual attack as to the existence of subject matter jurisdiction, maintaining that the record shows that a case or controversy no longer exists for this Court to adjudicate, thereby rendering Plaintiff's claim moot.

    **B. This Court lacks subject matter jurisdiction because MSPB has fully responded to Plaintiff's FOIA request, thereby leaving no "live" controversy to be adjudicated.**

It is a fundamental tenet of jurisprudence that without a "live" controversy, an Article III federal court lacks subject matter jurisdiction to adjudicate a case. As this Court has noted,

> Under Article III, Section 2, of the Constitution, federal courts have authority to adjudicate only ongoing cases or controversies, and this requirement is no longer met when the dispute has become moot. *Cleveland Nat. Air Show, Inc. v. U.S. Dep't of Transp.*, 430 F.3d 757, 761 (6th Cir. 2005) (citing *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004)). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "An actual live controversy 'must be extant at all states of review.'" *Chirco*, 384 F.3d at 309 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 6 (1997).)

*Doe v. Bredesen*, No. 3:04-cv-556, 2006 WL 849849, at *4 (E.D. Tenn. Mar. 28, 2006). The Sixth Circuit has observed that "[t]he issue of mootness implicates the court's subject matter jurisdiction inasmuch as federal courts are limited by Art. III of the Constitution to deciding cases and controversies." *Mosley v. Hairston*, 920 F.2d 409, 414 (6th Cir. 1990). And, as the Supreme Court has noted, it has long been accepted that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

"Under 5 U.S.C. § 552(a)(4)(B), a federal court is authorized only to enjoin the agency from withholding agency records and to order the production of any agency records improperly

withheld." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). Therefore, if an agency releases all non-exempt records responsive to a request, the controversy ceases to exist and the case becomes moot. *Tijerina v. Walters*, 821 F.2d. 789, 799 (D.C. Cir. 1987) (finding FOIA claims moot once the agency released all non-exempt material to the plaintiff). Indeed, even if an agency is tardy in responding, once a search for responsive documents is properly made and responsive material is produced, the claim is mooted. In *Tijerina*, although the Veteran's Administration did not provide responsive documents until after the statutory deadline had passed, the circuit court nonetheless found that the plaintiff's claim had properly been dismissed, stating:

> As we have noted, "however fitful or delayed the release of information under the FOIA may be . . .[,] if we are convinced appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). We are so convinced and therefore find that these claims no longer present a live controversy.

*Id.* (alteration in the original). Worth noting, this analysis has been repeatedly applied by this Court to this Plaintiff. *See, e.g., Carson v. U.S. Department of Justice, Case No. 3:10-CV-56* (holding that the case was moot, despite the fact that the agency did not release a FOIA response until after the lawsuit was filed, as there was no evidence that the agency acted in bad faith in the processing of the FOIA request)*; Carson v. U.S. Securities and Exchange Commission*, Case No. 3:09-CV-615; *Carson v. U.S. Office of Special Counsel*, Case No. 3:10-CV-57 and *Carson v. U.S. Merit Systems Protection Board*, Case No. 3:11-CV-399.

Here, Plaintiff's FOIA request was received by MSPB on November 8, 2019. MSPB has only one full-time FOIA processor and, as a result, has a significant backlog of FOIA requests. However, MSPB was able to begin processing Plaintiff's request within a month from receipt. On February 21, 2020, Plaintiff was provided with an interim response. Unfortunately, shortly

7

Case 3:20-cv-00463-DCLC-HBG   Document 13   Filed 01/20/21   Page 7 of 13   PageID #: 47

thereafter the COVID-19 pandemic struck the United States. MSPB employees, like most of America, began to primarily telework. This further complicated MSPB's ability to search its records and finalize its response to Plaintiff.

On November 3, 2020, Plaintiff filed the instant action seeking to "catalyze MSPB's compliance with its nondiscretionary duties to … respond to his initial FOIA request …." MSPB, with the consent of Plaintiff, filed an Unopposed Motion for Extension of Time for Defendant to Respond to the Complaint (Doc. 8) which was granted by the Court on November 25, 2020 (Doc. 9). The purpose of the extension was to give MSPB additional time to finalize its response to Plaintiff's FOIA request. On January 5, 2021, a final response was sent to Plaintiff. There is no evidence to suggest that MSPB, or its employees, were not acting in good faith regarding the attention given to Plaintiff's request or the timing of its response, albeit the processing was not performed as quickly as Plaintiff would have liked.

Here, it is undisputed that Plaintiff's Complaint seeks only to compel MSPB to respond to Plaintiff's November 8, 2019 FOIA request. It is also undisputed that MSPB has fully responded. Per the Declaration of Karin Kelly, MSPB performed a comprehensive search of their records in good faith. In response to Plaintiff's FOIA request, seven of Plaintiff's nine specific requests have been responded to either "fully" or as having "no records responsive" to the request. The remaining two requests have had all of the responsive documents produced with redactions. The redactions made by MSPB are proper applications of Exemptions 5 and 6 to the FOIA.

As recognized by this Court:

Exemption 5 of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (1982), permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Exemption 5 preserves certain privileges to agencies

such as "the attorney-client privilege, the attorney work-product privilege and the executive 'deliberative process' privilege." *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980); *see also Libertarian Party of Ohio v. Husted*, 2014 WL 3509749, at *3 (S.D. Ohio July 14, 2014).

*United States ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2015 WL 12917012, at *2 (E.D. Tenn. Apr. 27, 2015). In other words, this exemption protects documents normally privileged in the civil discovery context. *FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983). As applied to the redactions in this case, and as Exhibit A to the Declaration of Karin Kelly makes clear, the internal discussions of the various MSPB lawyers and officials regarding Plaintiff's case (now on appeal to the Sixth Circuit) are subject to the attorney-client privilege and attorney work-product privilege. These internal deliberations would not be discoverable under the Rules of Civil Procedure, and the FOIA does not provide a workaround to this privilege.

In addition to attorney-client and attorney work-product privileges, the information redacted pursuant to Exemption 5 is also subject to the deliberative process privilege. As stated by the Sixth Circuit:

> Generally, the deliberate process privilege "protects from discovery 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *E.E.O.C. v. Burlington N.*, 615 F.Supp.2d 717, 719 (W.D. Tenn. 2009) *objections overruled sub nom. E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F.Supp.2d 603 (W.D. Tenn. 2009) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). To be covered by the deliberative process privilege, a document must be both "predecisional and deliberative." *Shafizadeh v. Bureau of Alcohol, Tobacco & Firearms*, 229 F.3d 1153 (6th Cir. 2000) (quoting *Schell v. United States Dep't of Health & Human Servs.*, 843 F.2d 933, 939 (6th Cir. 1988)). The privilege does not protect "factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3rd Cir. 1995). It also does not protect communications "made subsequent to an agency decision." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993).

> The United States Supreme Court has described the deliberative process privilege as resting "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news ...." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). The purpose of the deliberative process privilege is to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 939 (6th Cir. 1988) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Thus, the key issue in deciding whether the privilege applies is whether "disclosure of the materials would expose an agency's decision making process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (internal quotation omitted).

*Parke, Davis & Co.*, 623 F.2d at 5.

As applied to the instant case, portions of the documents that have been redacted pursuant to Exemption 5 contain internal communications, recommendations and deliberations between MSPB's attorneys and officials regarding MSPB's future policy on handling claims filed by MSPB employees and other individuals who assert that there will be a conflict of interest if their case is heard by an MSPB administrative judge. This includes internal deliberations by MSPB's Deputy General Counsel to MSPB's General Counsel. Notably, MSPB's General Counsel is also currently serving as MSPB's chief executive and administrative officer because there are no presidentially appointed, senate confirmed MSPB board members. Thus, these deliberations on future MSPB policy are predecisional and deliberative. Release of these internal deliberations would expose the MSPB's decision making process and discourage discussion within the agency as the deliberations could be weaponized against MSPB in future cases.

In addition to Exception 5, the MSPB properly applied Exemption 6 to certain portions of documents released to Plaintiff.  Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The Sixth Circuit has held that:

> [S]ection 552(b)(6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  We have read this section as establishing a two-prong inquiry: (1) whether the file includes personnel, medical, or "similar" data; and (2) if so, whether disclosure constitutes a "clearly unwarranted" invasion of privacy. *Heights Cmty. Cong. v. Veterans Admin.*, 732 F.2d 526, 528 (6th Cir.1984) (citing *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601–02 (1982)).  Under the threshold requirement, the exception applies to any government "records on an individual which can be identified as applying to that individual." *Id*. (quoting *Washington Post*, 456 U.S. at 601–02).  Determining whether disclosure works a clearly unwarranted invasion of privacy requires a balancing test under which courts identify the privacy interest at stake and weigh it against the public interest in disclosure. *Id*. at 529.  "The central inquiry is whether public access to the information is tantamount to an invasion of privacy; if so we ask whether such an invasion is justified by any countervailing public benefit from disclosure." *Id*. (quoting *Madeira Nursing Ctr., Inc. v. NLRB*, 615 F.2d 728, 730 (6th Cir.1980)) (alterations omitted).  A clear privacy interest exists with respect to such information as names, addresses, and other identifying information even where such information is already publicly available. *Abraham & Rose*, 138 F.3d at 1083 (citing *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 500 (1994)).

*Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001).

Here, MSPB redacted certain portions of its production because it referenced personally identifiable information regarding individuals other than the Plaintiff or MSPB employees in their official capacities.  In addition, an MSPB employee's social security number was redacted.  Because "a clear privacy interest exists with respect to such information," MSPB's redaction is appropriate.

## V. CONCLUSION

In conclusion, it is undisputed that Plaintiff's Complaint only sought to compel a response to his November 8, 2019 FOIA request. It is also undisputed that MSPB has fully responded. A comprehensive search was performed in good faith and all responsive documents were provided to Plaintiff on January 5, 2021. To the extent any documents were redacted, these redactions were appropriate under the FOIA as explained above. In short, there is no further relief this Court can order that has not already been given. Thus, there is no "live," justiciable controversy that remains to be adjudicated. Without such a controversy, the Court lacks subject matter jurisdiction, requiring dismissal of this lawsuit.

Respectfully submitted,

J. DOUGLAS OVERBEY
United States Attorney

By: *s/Ben D. Cunningham*
Ben D. Cunningham (TN BPR #030122)
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
Ben.Cunningham@usdoj.gov

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 20, 2021, a copy of the foregoing **Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to *pro se* Plaintiff, Joseph P. Carson, who is registered as a user of the electronic case filing system. Parties may access this filing the Court's electronic case filing system.

                                      *s/ Ben D. Cunningham*
                                      Ben D. Cunningham
                                      Assistant United States Attorney